**Mary A. GARRITY**

v.

**Joseph A. CALIFANO, Secretary of Health, Education and Welfare.**

Civ. A. No. 79–1209.

United States District Court,
E. D. Pennsylvania.

Oct. 4, 1979.

Harry J. Brown, Pottsville, Pa., for plaintiff.

William E. Gordon, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This case arises under Part B, Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended. 30 U.S.C. § 921 *et seq.* The Act establishes a program for the payment of benefits to living miners who are totally disabled due to pneumoconiosis arising out of coal mine employment and to the dependents of miners who died due to pneumoconiosis, or who were totally disabled due to pneumoconiosis at the time of their death.

On the merits the issue is whether the plaintiff's deceased husband was totally disabled due to pneumoconiosis at the time of his death. However, that issue has not been reached for the reason that the Administrative Law Judge (ALJ) has found that "claimant did not file a claim for benefits * * *". (Tr. 9) That is his only finding of fact.[1] Supporting such finding in his evaluation of the evidence in which he summarizes the plaintiff's contentions as follows (Tr. 7):

"The initial primary issue for consideration is whether an oral inquiry made by the claimant sometime in 1971 is sufficient to constitute a proper filing of a claim for widow's Black Lung benefits under the Federal Coal Mine Health and Safety Act of 1969. Claimant contends that sometime in 1971 she went to the Social Security Office in Pottsville, Pennsylvania to inquire about applying for Black Lung benefits. Claimant further contends that she brought along with her papers concerning her deceased husband's working in the mines and a copy of her husband's death certificate. Claimant contends that someone at the Social Security Office reviewed these papers and that after review of the death certificate she was told she could not get Black Lung because the cause of death shown on the death certificate was not a chronic respiratory disease but rather a cerebral vascular accident due to arteriosclerotic brain disease. The claimant then went home and forgot all about the matter. There was no further action on her part until July 29, 1974."

Thus, the ALJ summarizes the plaintiff's "contentions" but makes no findings as to whether the plaintiff in fact went to the Social Security Office, whether she in fact sought to file a claim, whether she in fact was told that she could not file a claim because, on the basis of the death certificate, she did not qualify, and whether in essence she was denied the right and opportunity to file a timely claim. Additionally, there are no conclusions of law giving consideration to the legal authorities and precedent upon which plaintiff relies in contending that her claim should indeed be considered. On the basis of such record, we cannot grant defendant's motion for summary judgment and it will be denied.

Obviously, the plaintiff did not formally file a claim in writing, on forms duly approved and designated, within the period of time prescribed by statute. That is all that the ALJ has found and that much the plaintiff, for practical purposes, concedes. The real issue involved is whether she attempted to file an application for benefits and was improperly denied the opportunity to do so by the only agency authorized to receive such application. Such claimants are properly encouraged to exercise their rights without the benefit of counsel. Agency personnel should be carefully trained and instructed as to their obligations and duties. Moreover, they should be carefully trained in the legal aspects of the particular subject matter involved.

Here, it is understandable that agency personnel, looking at the death certificate and seeing no reference to pneumoconiosis, silicosis, anthracosilicosis, occupational disease or black lung and not realizing that the issue was one of the cause of disability prior to death rather than the cause of death may well have concluded, in good faith, that there was no point in the plaintiff filing an application. To so advise the

---

1. The only remaining "finding" is not a finding of "fact". It is a statement of the statutory provisions relating to the time frames within which applications for benefits must be filed.

plaintiff and thus save her the burden of pursuing the claim and the disappointment incident to the ultimate denial thereof would have been the charitable thing to do under the circumstances. To now deny the claim without investigating the circumstances alleged by plaintiff may be less charitable.

▆▆▆ Accordingly, we shall remand the record for further consideration in accordance herewith. In doing so we are not unaware of the difficulties in determining the identity and location of agency personnel who may have advised the plaintiff and refused her application. Those difficulties, however, are not controlling. Rather, the threshold determination to be made by the ALJ is whether he believes the plaintiff. If he finds her trustworthy, credible and worthy of belief, her testimony alone is enough upon which to base an appropriate finding and apply thereto the rules and legal precedent relied upon by the plaintiff. If the plaintiff is believed Social Security Ruling SSR–77–14c (Tr. 8) should represent no bar to her claim. The employee act here involved, as alleged by the plaintiff, was not an "unauthorized" act by regulation or otherwise. It may have been the act of a sincere, conscientious employee not completely knowledgeable at the time of the breadth and effect of this complex and complicated legislation.

Finally, we note that plaintiff has not formally filed a cross motion for summary judgment. However, her brief seeks "judgment" and may, therefore, be treated as a cross motion for summary judgment. So treated, the motion will be denied.